LAWRENCE N. AMOS, ADM'R OF ELIJAH GAYLOR, DECEASED, APPELLANT, vs. NEIL CAMPBELL, APPELLEE.

1. A *trust*, in its strict and technical sense, is known only in equity, and so long as it subsists it cannot be reached, as between trustee and *cestui que trust*, by the statute of limitations.

2. To exempt a trust from the bar of the statute, it must be, first, a direct trust; second, it must be of a kind belonging exclusively to the jurisdiction of a Court of Equity, and, third, the question must arise between the trustee and the *cestui que trust*.

3. An *action at law* for a distributive share of an intestate's property cannot be maintained against the personal representative, although he may have expressly promised to pay.

4. Whether a final settlement in the Probate office and *an order to pay over* to the distributee will give the right to maintain such action—*Quære?*

5. The settlement of an executor's or administrator's account in the Probate office does not change his character as *trustee*, and he will still hold any balance in his hands, for distribution, and not adversely.

6. There is no rule defining definitely what *lapse of time* will bar a purely *equitable* demand. Each case must depend upon its own circumstances.

7. The maxim, *vigilantibus non dormientibus jura subveniunt*, is founded upon considerations of public policy and enlarged views of right and justice, and is to be highly commended when properly applied.

8. There is no particular *form* necessary for the *notice* directed to be given in the statute of *non-claim*. It should, however, be so full and ample in its terms as to make it a WARNING to those having demands against the estate.

9. Under the policy of the several statutes regulating the administration of estates, the rights of *creditors* and of *distributees* stand upon a different footing. While the statute of *non-claim* will operate as an absolute *bar* to the former, it will not prevent a recovery by the latter.

10. The object and design of the statute of *non-claim* is three-fold: First, to facilitate the settlement of estates by prescribing a limit of time within which creditors and other persons having an interest should be compelled to exhibit their claims preparatory to a final distribution; second, to protect the executor or administrator in all payments which he might make *bona fide* after the expiration of the two years; third, to quiet the title of the legatees or distributees to the property received as such legatees or distributees.

11. Where there has been unreasonable delay on the part of a distributee to call the administrator to account, he will be allowed, at farthest, only simple interest on his demands.

This case was decided at Marianna.

Appeal from Escambia Circuit Court.

A statement of the case will be found in the opinion of the Court, to which reference is made.

*Jordan, Yonge, McClellan* and *Barnes* for appellant.

*R. L. Campbell* for appellee.

DuPONT, C. J., delivered the opinion of the Court.

The appellee brought suit on the equity side of the Circuit Court of Escambia county against the appellant as administrator of the estate of Elijah Taylor, deceased. The bill filed in the cause sets out, that one Charles Campbell, being possessed of a considerable amount of personal property, departed this life in the year 1829, leaving the complainant as his only child and heir; that after the decease of the said Charles Campbell, one Elijah Gaylor obtained letters of administration on his estate and entered upon the administration thereof; that the said administrator, on the 13th day of April, 1836, presented to the Probate Court of Escambia county his account current as administrator of the estate, which account was then allowed by the Judge of the

said Court, and a balance of $1,122.97½, found to be due by him to the estate of the said Charles Campbell.

The complainant further charges, that this balance has never been accounted for by the said administrator, and that, as sole distributee of his father's estate, he is entitled to the said balance, after deducting the amount that his mother may have been entitled to as the widow's share.

The bill further states, that the said Elijah Gaylor departed this life in the year 1853, and that on the 28th day of March, 1854, administration of his estate was granted by the Judge of Probate of Santa Rosa county to the said appellant, and asks that the said administrator of the said Gaylor may come to an account with the complainant for the said balance so remaining against him at the time of his death.

The answer of the defendant, admitting that the complainant is the only child of the intestate, Charles Campbell, alleges that his intestate, Elijah Gaylor, intermarried with the widow of the said Campbell on the 17th day of March, 1831, and thereby became entitled, under the statute, to one-half of the estate of the said Campbell. It further admits that Gaylor did obtain letters of administration on the estate of Campbell, and alleges that in September, 1831, he published in the Pensacola Gazette, for the space of eight weeks, a notice to the creditors, legatees and distributees of the estate to present their claims within the time prescribed by the statute ; that after the payment of all the debts and expenses incident to the administration the said Gaylor made a final settlement of his accounts in the Probate Office and thereupon (as defendant believes) obtained a final discharge from the Office of Administrator. The answer further alleges that the said Gaylor, after retaining the portion of the estate to which he was entitled in right of his wife, paid over to complainant whatever amount was coming to him from the estate, and that in fact, upon a fair settlement between the complainant and the estate of the said Gaylor,

it would be made to appear that the said complainant is largely indebted to the said estate for over advances made to him and on his account by the said Gaylor in his lifetime. The answer further sets up, by way of a plea in bar, that the complainant did not present to Gaylor, the administrator on his father's estate, any claim or demand as distributee or otherwise at any time within *three* years next after the publication of the notice aforesaid. It also sets up further, by way of plea, that the amount so claimed by the complainant was due (if at all) *five years and more* before the death of the said Gaylor. And further, by way of plea in bar, the answer sets up and insists upon it as a full defence of the bill, that "none nor either of the said supposed cause or causes of action mentioned by the said complainant in his said bill of complaint did arise or accrue to the said complainant within *five years* next before the death of the said Elijah Gaylor, deceased, nor within *five years* next before the commencement of this suit."

To this answer the complainant filed the general replication, and subsequently the following admissions in writing were filed with the papers of the cause, viz: "The complainant in the above stated cause admits that Elijah Gaylor married Nancy Campbell, who was the widow of Charles Campbell, deceased, and mother of complainant."

The following notice is also admitted to have been published in the Pensacola Gazette, viz:

"Letters of administration having been granted to the subscriber on the estate of Charles Campbell, deceased, all persons having claims on said estate are requested to present the same for settlement within two years, and those indebted to the said estate are requested to make payment.

"Sept. 10—8w-17     ELIJAH GAYLOR, Adm'r."

The following admission in writing was also filed: "Admitted, that two months' notice of final settlement was given in 1835."

The depositions of several witnesses are also incorporated into the record, but as these do not bear upon the question before us, it is unnecessary to notice them further. On the 3d day of January, 1859, the Chancellor made the following decree:

"This cause came on to be heard at the June term, A. D. 1858, of this Court and was argued by counsel, and thereupon and upon consideration thereof it is ordered, adjudged and decreed as follows: That the said cause be and the same is hereby referred to Walker Anderson, Esq., who is hereby appointed special Master in Chancery, to take and state an account of the amount due to the estate of Charles Campbell, deceased, by the said Elijah Gaylor, in his lifetime, as administrator of the said estate of Charles Campbell, and to inquire and state to the Court what parts, if any, of said estate of Charles Campbell are outstanding or undisposed of, and also take and state an account of the distributive share of the said complainant in the said estate of Charles Campbell. In stating said account the said Master shall allow the said complainant compound interest on his said distributive share from the time that the estate of the said Charles Campbell might have been distributed by the said Elijah Gaylor. And the said Master shall credit the estate of the said Elijah Gaylor for all disbursements rightfully made by him, on account of the estate of the said Charles Campbell for all payments made by the said Elijah Gaylor to the said complainant on account of his distributive share of the said estate of Charles Campbell, and also for commissions and such other compensation as the said Elijah Gaylor or the respondent, as his administrator, may be entitled to for managing and distributing said estate of Charles Campbell."

From this decree the defendant appealed, and now brings the record before this Court for our adjudication. The grounds upon which a reversal of the decree is asked for in

this Court are : First. That the demand is barred by the general statute of limitations of *five years*. Second. That the demand is barred by its *staleness*. Third. That it is barred by the statute of *non-claim*, the same not having been presented to the administrator within the *two years* prescribed by the statute.

We will consider these several grounds in the order in which they are here presented.

And first, as to the statute of limitations. The plea in this case raises the question whether, in a suit in equity by a distributee, calling upon the administrator for an account and distribution of the estate, he will be allowed to interpose the statute as a bar. The question how far and in what cases a Court of Equity will allow the plea has been much discussed, and the reported cases present no little confusion on the subject. It will be seen, however, upon a critical examination of the authorities, that this confusion exists not so much with regard to the principle to be acted upon as to the application of that principle to particular cases. "Trusts," (says Angell on Limitations, 188,) "in their strict and technical sense, are known only in equity, and falling as they do in such a sense in the peculiar and exclusive jurisdiction of a Court of Equity, the doctrine has been long established that so long as they subsist they cannot be reached, as between trustee and *cestui que trust*, by the statute of limitation. He further remarks, that "to exempt a trust from the bar of the statute, it must be first a direct trust; second, it must be of the kind belonging exclusively to the jurisdiction of a Court of Equity, and, third, the question must arise between the trustee and the *cestui que trust*."

These principles are ably supported and sustained by the great case of Kane vs. Bloodgood, (7 John. Ch. Reps., 90,) decided by Chancellor Kent, in which he enunciates his conclusion thus: "Those trusts which are mere creatures of a Court of Equity, and not within the cognizance of a Court

of law, are not within the statute of limitations." It would certainly be esteemed a work of supererrogation, if not of presumption, to attempt at this day to discuss a principle which has received the impress of the greatest minds of the age, and has been moulded into symmetry by the plastic hands of the masters of the law. It remains for us only to apply the principle, guided by such lights as may be afforded us. In order to test the applicability of the principle to this case, we will enquire, first, whether the *trust* here insisted upon is direct and peculiar to a Court of Equity? Angell, in his work on Limitations, (168,) says: "The most common mode of creating *direct* trusts, not cognizable at law, is by the appointment and qualification of executors and administrators. Executors who are precluded from taking beneficially, and administrators claiming merely as such, cannot, by virtue of a lapse of time merely, set up a title to the general residue. Being simply and technically trustees, there is no principle of equity which, upon that single consideration, can admit of their holding to the exclusion of the parties beneficially entitled."—Citing 1 John. Ch. R., 314; 3 John. Ch. R., 316.

It will be thus seen, that the trust growing out of the office of executor or administrator is not only *direct* but *peculiarly* within the province of equity jurisdiction. We will now proceed to show that it belongs *exclusively* to equity, and that no action can be maintained in a Court of law against an executor or administrator for the recovery of a legacy or a distributive share of the estate. The case of Deeks vs. Strutt, (5 Term Reports, 690,) was an action of assumpsit brought against the executor for the arrears of an annuity bequeathed to the wife of the plaintiff. The executor never made any express promise to pay, but the assets were sufficient to satisfy the plaintiff's demand. It was contended for the plaintiff, that when a man was under a legal

or equitable obligation to pay, the law *implies* a promise, though none was ever made. The Court of King's Bench decided that the action could not be maintained, and Lord Kenyon, in giving his judgment, made the following observations: "The supporting of the present action would be attended with the most pernicious consequences, and I believe that no action till lately (except one in the time of the commonwealth) for a legacy has been supported in a Court of law."

Mr. Williams, commenting upon this case, remarks: "It will be observed, that, in Deeks vs. Strutt, the executor had not *expressly* promised to pay, and this circumstance has led to doubts whether the decision of that case went further than to determine that an action for a legacy cannot be supported on an *implied* assent in law of the executor, and whether an action will not still lie upon an express promise by him in consideration of assets, or upon an express admission by him that he has money in his hands for the payment of the legacy. However, the judgment of Lord Kenyon has been generally considered as an unqualified decision that an action at law cannot be maintained for a legacy. And in a late case, it was holden by the Court of K. B. that an action at law for a distributive share of an intestate's property cannot be maintained against the personal representative, although he may have expressly promised to pay."—2 Will. on Ex'rs, 1,644, citing to last point Jones vs. Tanner, 7 B. & C., 542.

Chancellor Kent, in his opinion delivered in the case of Kane vs. Bloodgood, before cited, remarks upon the case of Decache vs. Savetier, previously decided by him and reported in 3 John. Ch. R., 216, as follows: "I am now lead to apprehend, in consequence of a more thorough examination of the question, that I did not lay sufficient stress in that case upon the circumstance, that, BY THE STATUTE LAW OF THIS STATE, actions at law, of debt, detinue or account

may be brought for legacies and distributive shares.   In *England*, it is the proper and exclusive province of the Courts of Equity to enforce the payment of legacies and distributive shares, and, following the *English* cases, I concluded that the statute of limitations did not apply to such demands."

But, it is insisted for the appellant, that the settlement made by the administrator in the Probate office altered the relation between him and the next of kin, and divested him of his character of *trustee*, and that, from the date of that settlement, he stood only in the light of a *debtor* to the estate for the amount of the balance which was struck against him on that settlement.   The argument predicated upon this hypothesis is, that, being only a debtor and divested of the trust, equity, acting in obedience to the law, will allow the operation of the statutory bar of limitation. For this position we have been cited to the case of Ivey vs. Rogers, 1 Badger vs. Deveraux Eq. Cases, 58, but we have been unable to get access to the authority.   It will be seen, however, that directly the converse of that position has been held in Pennsylvania, and we think it the better doctrine. There it is held that "the settlement of an executor's account in the proper Court *does not change his character as trustee*, and that he still holds the assets for the purposes of the will and not adversely to it."—Thompson vs. McGarr, 2 Watts' R., 161, cited in Angell on Lim., § 176.

From these authorities we are constrained to decide, that the plea of the statute of limitations could not be allowed to bar a recovery in this cause.   By reference, however, to the formula prescribed in the statute (Thomp. Dig., 197,) for the bonds to be given by administrators, it will be seen that one of the CONDITIONS of the same is that the administrator shall "make or cause to be made a true and just account of his administration when required, and all the rest and residue of said goods, chattels, rights and credits

which shall be found remaining upon the administrator's account, the same being first examined and allowed by the Probate Court of the county where the said administration is granted, and shall deliver and pay to such persons respectively as the said Court, by their order and decree, pursuant to the true intent and meaning of this act, shall appoint and direct." Whether such an *order to pay over* as is contemplated in this condition of the bond would have the effect to convert the *balance* so due by the administrator into a simple *debt recoverable at law*, and consequently subject to the bar of the statute, we do not decide.

The second ground of defence is, that the demand of the bill is *stale*. This is a defence *peculiar* to Courts of Equity, and is founded upon the mere lapse of time, where the statute of limitation is not allowable, upon the principles heretofore stated. "In such cases," (says Judge Story, 2 Eq. Ju., § 1,620,) "Courts of Equity act sometimes by analogy to the law, and sometimes act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere where there has been gross laches in prosecuting rights or long and unreasonable acquiescence in the assertion of adverse rights." The maxim, *vigilantibus non dormientibus jura subveniunt*, is founded upon considerations of public policy, and on enlarged views of right and justice, and is to be highly commended when properly applied. But, as is well remarked in the case of Trescot vs. Long, (2 Vesey, Jr., 620,) "Each case depends upon its circumstances and the discretion of the Court."

In looking to the circumstances of this case we see no reason to *bar* the complainant from the prosecution of his demand on account of its staleness, but as he has slept over his rights for nearly fifteen years, and has thus been lacking in proper vigilance, we shall direct the decree to be modified so far as to allow *simple* and not compound interest upon the account directed to be taken by the Master. In-

deed, considering that the administrator is now dead, and that the accounting party is his personal representative, we have been strongly inclined to the disallowance of any interest at all.

The third and last ground of defence is that the demand is barred by the statute of *non-claim*, as it is usually denominated. That statute is in the following words: " All debts and demands of whatsoever nature against the estate of any testator or intestate which shall not be exhibited within the said two years shall forever afterwards be barred : *Provided*, That the executor or administrator shall, by an advertisement, to be published once a week for the space of four weeks, in some newspaper published in this State, give notice to all creditors, legatees and persons entitled to distribution, that their claims and demands will be barred at the expiration of the period aforesaid, unless exhibited within the same"—with the usual *saving* to persons laboring under disabilities, of two years after these disabilities shall have been removed.

The record presents the fact that a *notice* was published by the administrator for the space of four weeks, a copy of which is inserted in the statement of the case herein contained.

It is insisted for the defendant that it was incumbent upon the complainant to show that he had made due presentation of his demand within the time prescribed by the statute, and that not having done so the statute was a bar to his recovery. On the other hand, it is contended, *first*, that the notice is defective in substance ; and, *second*, that even if good in form and substance, it presents no bar, the provision of the statute not being designed to prevent a *distributee* from recovering of the administrator the portion of the estate to which he may be entitled. We will consider first the sufficiency of the notice.

In the case of Fillyau and Wife vs. Laverty, (3 Flo. R.

72,) the question as to the sufficiency of the notice came up for adjudication. That was a bill filed by a *creditor* against the distributee, to whom the executor had turned over the estate and had obtained a discharge. The defendants pleaded the statute of *non-claim* in bar of the recovery, and at the hearing relied upon the *notice* which had been published by the executor. That notice was in the following words: "All persons having any claims against the estate of William D. Harrison, deceased, are hereby *warned* to present them to the subscriber within the time prescribed by law, or they will be forever barred of recovery. All those indebted to the estate are requested to make immediate payment." In considering the sufficiency of this notice, the Court (Hawkins, J., delivering the opinion) say: "It embodies, we think, substantially the requirements of the statute, and although it does not contain the words ' creditors, legatees and persons entitled to distribution,' still we think the words, ' all persons having any claims against the estate,' are of so comprehensive a character that they include and embrace within their meaning, creditors, legatees and persons entitled to distribution, upon the principle that the *major* includes the *minor*." "The notice before the Court, from its substantial conformity to the requisitions of the section containing the statute of *non-claim*, must be taken by the Court as a sufficient compliance with the provisions of the statute."

It will be seen by reference to the copy of the notice set forth in the statement of the case now under consideration that, both as to form and substance, it differs materially from the notice given in the case above cited. While the one is both mandatory and cautionary in its terms, the other is only precatory. In the case cited, the notice in terms *warns and cautions*; the notice in this case simply *requests* the presentation of claims. From the view which we have taken of the remaining question, it does not become neces-

sary that we should rule definitely upon the sufficiency of the notice given in this case. We will, therefore, dismiss the point by a brief reference to what was said in the case of Ellison, Administrator, vs. Allen, (8 Flo. R., 206,) when the same question was incidentally alluded to. The Court there said: "We will take occasion to remark that the notice should be ample and full in its terms, and should particularly state the limitation of *two years* as the period within which the claims are to be presented. In making this remark, we do not intend to be understood as coming in conflict with the case of Fillyau and Wife vs. Laverty, where this point, as to the sufficiency of the notice in this respect, was expressly ruled, but we only desire to call attention to its importance, that the operation of the statute may be such as that it may be made to subserve its legitimate end and object, viz: of furnishing full and ample notice to those who may have just claims or demands against the estate."

The next point for consideration, arising under this head, involves the interpretation of the statute as affecting the rights of the *distributee.* The case of Fillyau and Wife vs. Laverty, before referred to, has been cited by the counsel for the appellant as conclusive of this matter. But it will be noted as before stated, that in that case the bill was filed by a *creditor* of the estate to enforce the payment of his debt from a distributee who had received from the executor his distributable portion of the estate. The Court decided, very properly we think, that the prescribed notice having been given by the executor, and the debt not having been presented to him within the two years, and being consequently barred as *against him*, it could not be enforced against the distributee. Indeed, we are at a loss to conceive how any other conclusion could have been arrived at. But that case presents a very different aspect from the one now under consideration. The complainant here is a distributee

suing for an account from the administrator, and stands, we conceive, upon different grounds from a creditor.

It is said, however, that it is clearly intimated in the opinion delivered in the case of Fillyau and Wife vs. Laverty that the two classes occupy, under the statute, the same position as to their rights against the executor, and that suggestion is based upon the remark of the Court, that the words " *all persons having any claims against the estate* " " are of so comprehensive a character that they include and embrace within their meaning ' creditors,' legatees and *persons entitled to distribution.*" It will be perceived, however, by reference to the context, that the Court, in making that remark, was discussing the sufficiency of the notice relied upon in that case as a defence, and was not upon the rights of these several classes.

We think, therefore, that the position of the appellant derives no support from the decision made in that case. Other cases were also cited to the same point, but, being only rulings upon the *local* statute of the State in which they occurred, they afford but little light upon the subject, and can guide to no safe conclusion as to the meaning of our statute.

It is admitted that the words of the statute would seem to place creditors, legatees and distributees upon the same footing in reference to the bar of the two years, but it is well settled that words will never be permitted to control, much less contravene, the object, intent and design of the Legislature, where these can be gathered from other portions of their legislation with reference to the same subject. If the construction contended for by the counsel for the appellant be correct, what becomes of the provision of the act of 1834, prescribing the mode and terms upon which an executor or administrator may obtain a discharge from his office? That provision is as follows:

"If any executor or executrix, administrator or adminis- tratrix, shall be desirous of obtaining a *discharge* from his

or her executorship or administratorship, it shall be competent for him or her to receive the same upon application to the Judge of Probate or other person charged with the duties of ordinary: *Provided*, That six months notice of such intended application be given in one or more of the gazettes nearest the place where the letters were granted: *And provided, also*, That it shall appear that the said applicant has faithfully and honestly discharged the trust and confidence reposed in him or her; and the discharge so obtained shall be taken to operate as a release from the duties of executor or executratrix, administrator or administratrix, and shall furthermore operate as a bar to any suit against the person so having acted as executor or executrix, administrator or administratrix, unless the same be commenced within five years from the date of said discharge, saving," &c.—Thomp. Dig., 211, sec. 11, § 1.

Now if the bar of the *two years* contained in the *non-claim* act was designed and intended to reach to *all* demands that could be made against the executor or administrator, it is difficult to perceive the necessity for this provision which was enacted some six years subsequent to the date of that act. It is evident that at the period when this latter act was passed, the Legislature conceived that they could be called to account at any time, notwithstanding the existence of the *non-claim* act, and that this provision was made for their protection by enabling them to disconnect themselves from the *trust* and *confidence* attaching to their respective offices. The claim of the creditor, being strictly a *debt against the estate*, was fully provided for in the *non-claim* act; but the demand of the distributee, being rather against the *executor or administrator* holding as trustee than against the estate, it was deemed proper to afford them this statute of repose as a shield against the enforcement of *stale* demands from that quarter. We can give no other interpretation to the design of the Legislature in the passing of this act.

24

But again, if the position assumed by the counsel for the appellant is correct, what becomes of the statute regulating escheats? By reference to the provisions of the act, it will be seen that where no person appears to take the estate, the proceeds thereof are directed to be paid into the State treasury for the benefit of the public. But if the statute of *non-claim* is to receive the construction contended for, then this act becomes wholly nugatory and of none effect; for, under that construction, if no demand be made within the two years by one entitled to the distribution, the administrator will retain the estate to his own benefit. A construction which would lead to such a result is evidently incorrect. The object and design of the statute was, doubtless, three-fold: first, to facilitate the settlement of estates by prescribing a limit of time within which creditors and other persons having any interests should be compelled to exhibit their several claims preparatory to a final distribution; second, to protect the executor or administrator in all payments which he might make *bona fide* after the expiration of the two years, and, third, *to quiet the title* of the legatees and distributees to the property which they may have received as such legatees or distributees. This we conceive to have been the whole scope, intent, meaning and design of the Legislature in the enactment of this provision of the statute. It never could have been their intention to invest the executor or administrator with the title to the whole estate upon the failure or neglect of the legatees or distributees to present their claims within the prescribed limit of two years.

It will be thus seen that we sustain the right of the complainant to have an account from the representative of the administrator on the estate of Charles Campbell, deceased; but in the taking of the account the Master must be directed to allow simple interest only on the amount that may be found to be due the estate.

It is therefore ordered and adjudged that the decree of the

Chancellor, rendered on the 3d day of January, A. D. 1859, whereby this cause was referred to a Master, with directions to take an account (except so much thereof as directs the mode of calculating interest on the same,) be affirmed; and as to so much of the decree as is above excepted that the same be *reversed* and set aside and the cause be remanded, with directions to the Chancellor to reform his decree by directing the allowance of *simple* interest only in making up the account to be taken by the Master.

It is further *ordered*, that the costs of this appeal be equally apportioned between the parties appellant and appellee.